OPINION
{¶ 1} Appellant, FOE AERIE 3998, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the appellee, the Ohio Liquor Control Commission ("commission"), sanctioning appellant for violating Ohio Adm. Code 4301:1-1-53
("Rule 53"). Because the trial court did not abuse its discretion in affirming the commission's order, we affirm that judgment.
 {¶ 2} Appellant is a D-4 liquor permit holder in Covington, Ohio. On March 1, 2002, agents from the Ohio Department of Public Safety conducted an investigative search of appellant's premises to investigate a complaint of gambling. Their investigative report indicates that during the search, the agents found various brands of tip tickets behind the bar and pay-off records from daily and weekly drawings. The agents interviewed Thomas Walker, a bartender, who told them that proceeds from the sale of the tip tickets go into the cash registers behind the bar and eventually into appellant's general fund. Mr. Walker told the agents that the fund is used for everything from payroll to building expenses. He also stated that the bar's trustees meet each month to decide which charities receive money from the fund. Mr. Walker could not find any records of appellant's tip ticket sales.
 {¶ 3} The agents also interviewed Luther Landis, a bar trustee. Mr. Landis told the agents that the bar purchases the tip tickets from the state FOE and that all the money received from tip ticket sales goes to the national FOE. Appellant then received a check from the national FOE. Mr. Landis stated that appellant's trustees met once a month to decide which charities would receive that money. Mr. Landis could not identify any charities that received appellant's money. Mr. Landis doubted whether the bar retained records of the tip ticket sales. Mr. Landis also told the agents that appellant paid out to winners 100 percent of the money brought in by the daily and weekly drawings. The agents seized boxes of tip tickets, records of daily and weekly drawings, as well as: (1) $89 found in a box labeled "Friday drawing (weekly)"; (2) $17.35 found in a box labeled "Daily drawing"; (3) $59 in a box labeled "Weekly drawing"; and, (4) $423.31 and $578.51 from the bar's two cash registers. As a result, the Ohio Department of Public Safety issued appellant a notice of hearing, contending it had violated Rule 53 by allowing gambling on its premises.
 {¶ 4} At the hearing on this matter, appellant stipulated to the facts set forth in the investigative report which was admitted into evidence. Part of that report also included a general description of a tip ticket, which stated, in pertinent part, "[t]hey [tip tickets] also are produced in such a way that profit is guaranteed. Losing tickets outnumber the winning tickets, assuring purchase monies are more than pay-outs." After the hearing, the commission found that appellant had violated Rule 53 by allowing gambling on its premises and ordered it to either pay a $48,000 fine or serve a 240-day permit suspension. Appellant appealed the commission's decision to the Franklin County Court of Common Pleas. The common pleas court affirmed the commission's decision. It determined that there was reliable, probative, and substantial evidence to prove appellant violated Rule 53 and that appellant failed to prove it fell within the charitable gambling exception found in R.C. 2915.02.
 {¶ 5} Appellant appeals, assigning the following error:
The Court below erred when it found that the order of the Liquor Control Commission was not supported by reliable, probative and substantial evidence.
 {¶ 6} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87. Reliable, probative, and substantial evidence has been defined as follows:
* * * (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571.
 {¶ 7} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford ExemptedVillage School Dist. Bd. of Edn. v. State Bd. of Edn. (1992),63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination as to whether the commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, on the question of whether the commission's order was in accordance with law, this court's review is plenary. Univ.Hosp., Univ. of Cincinnati College of Medicine v. State Emp.Relations Bd. (1992), 63 Ohio St.3d 339, 343.
 {¶ 8} Rule 53 prohibits gambling offenses as defined in R.C.2915.01(G) from occurring on a liquor permit premises. VFW Post8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, 81. At oral argument before this court, appellant conceded that gambling occurred on its premises. However, appellant contends that the gambling was legal because it complied with the charitable gambling exception found in R.C. 2915.02(D). The trial court determined that appellant failed to prove that its gambling complied with this exception. We agree.
 {¶ 9} R.C. 2915.02(D)(1) provides an exception for charitable gambling if certain conditions are satisfied. Those conditions, in relevant part, require:
(b) The games of chance are conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect, stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code.
* * *
(d) All of the money or assets received from the games of chance after deduction only of prizes paid out during the conduct of the games of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code[.]
 {¶ 10} Appellant has the burden of proof to prove that its gambling falls within this charitable exception. Big Bob's, Inc.v. Ohio Liquor Control Comm., 151 Ohio App.3d 498,2003-Ohio-418, at ¶ 31; Valentino v. Ohio Liquor Control Comm.,
Franklin App. No. 02AP-586, 2003-Ohio-1937, at ¶ 34-36. Appellant must prove that it strictly complied with the requirements of the exception. See Ohio Adm. Code 4301:1-1-53(D); P.T. Properties,Inc. v. Ohio Liquor Control Comm., Franklin App. No. 01AP-1102, 2002-Ohio-2875, at ¶ 14. Because the charitable gambling exception is an affirmative defense, appellant must prove the exception by a preponderance of the evidence. Valentino, supra, at ¶ 34-36, quoting Hurt v. State Liquor Control Comm. (Nov. 26, 1997), Montgomery App. No. 16232.
 {¶ 11} In its attempt to meet this burden, appellant points to comments in the investigative report where Mr. Landis stated that appellant purchased the tip tickets from the state FOE, which is a 501(c)(3) organization, and that the income from the tip tickets goes to the National FOE organization. The National FOE then gives back money to appellant, who in turn gives that money to charity. Part of the investigative report also included an undated document stating that the Ohio State Eagles Charity Fund, Inc., is a 501(c)(3) organization that receives all of the proceeds from the schemes or games of chance sold at appellant's bar. Finally, there is also a determination letter from the Internal Revenue Service dated April 19, 2001, which states that the Ohio State Eagles Charity Fund, Inc., was a 501(c)(3) organization.
 {¶ 12} Although the above evidence does show that the Ohio State Eagles Charity Fund, Inc., was a 501(c)(3) organization, the evidence that all of the proceeds from appellant's tip ticket sales went to such an organization was conflicting at best. The undated document naming the Ohio State Eagles Charity Fund as a 501(c)(3) organization states that it receives all of appellant's tip ticket proceeds. However, Mr. Walker said that the money from the tip ticket sales went directly into appellant's general fund that was used for expenses such as payroll and building improvements. Even Mr. Landis said that the proceeds went to the national FOE and not the state FOE. There is no evidence that the national FOE is a 501(c)(3) organization. Mr. Landis then said that appellant's trustees decide which charities receive money but he could not name any charity that received any money from appellant.
 {¶ 13} More significantly, appellant presented no documentation showing the amount of proceeds it received from the sale of the tip tickets. Without such evidence, appellant could not carry its burden to show that all of the proceeds from the sale of tip tickets went to a qualifying charitable organization. See Big Bob's, supra, at ¶ 31; R.C. 2915.02(D)(1)(d).
 {¶ 14} Given the conflicting evidence regarding who received the proceeds from the sale of tip tickets and the lack of evidence showing the amount of proceeds received, the trial court did not abuse its discretion in finding that appellant failed to prove by a preponderance of the evidence that its gambling activities complied with the charitable gambling exception in R.C. 2915.02(D). Nor did the trial court abuse its discretion in finding that the commission's order was supported by reliable, probative, and substantial evidence because appellant admitted that gambling activity occurred on its premises. Therefore, appellant's assignment of error is overruled.
 {¶ 15} Having overruled appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Wright, JJ., concur.
Wright, J., retired, of the Supreme Court of Ohio, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.]